UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW HOUSING COMMISSION
and DOES 1-300,

   Plaintiffs/Counter-Defendants,

                Case Number 08-12148-BC
v.                Honorable Thomas L. Ludington

BANNUM INCORPORATED,

   Defendant/Counter-Claimant,

-and-

SAGINAW SCHOOL DISTRICT,

   Plaintiff/Counter-Defendant,

                Case Number 08-12154-BC
v.                Honorable Thomas L. Ludington

BANNUM INCORPORATED,

   Defendant/Counter-Claimant,

CITY OF SAGINAW,

   Defendant.

_____/

**ORDER DENYING DEFENDANT BANNUM'S MOTIONS FOR RECONSIDERATION**

On July 24, 2008, this Court issued an Opinion and Order remanding these two related cases to the Saginaw County Circuit Court. *See* dkt. # 23 (08-12148); dkt. # 19 (08-12154). Defendant Bannum, Incorporated ("Bannum") now requests the Court reconsider its decision to abstain and remand the cases to the state court. Dkt. # 26 (08-12148); dkt. # 22 (08-12154).

I

Plaintiff Saginaw Housing Commission ("SHC") and Plaintiff Saginaw School District ("SSD," collectively "Plaintiffs") each filed complaints in state court to enjoin the construction and operation of a federal Residential Re-entry Center ("RRC") in Saginaw, Michigan. Plaintiffs contend that Defendant City of Saginaw ("City") did not observe the correct procedures provided for in the City's zoning code of ordinances ("Code"), when it issued a permit approving the RRC facility. Bannum's operation of the RRC without a valid special use permit and the City's non-compliance with the procedural requirements of the Code, Plaintiffs assert, equate to a nuisance per se.

Bannum removed both cases to this Court on May 16, 2008. Thereafter, the parties filed various motions. In case 08-12148, SHC filed a motion requesting this Court abstain from exercising subject matter jurisdiction or, alternatively, remand the case to the state court. SHC also filed a motion requesting leave to amend its complaint to include the City as a defendant and to further allege violations of SHC's rights guaranteed under the Fourteenth Amendment of the U.S. Constitution. In case 08-12154, SSD moved to remand the case to the state court, contending that the City was not fraudulently joined as a party defendant in order to defeat federal court diversity jurisdiction. In both cases, Defendants moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b).

After consolidating the motions for hearing, the Court concluded that it should abstain from exercising jurisdiction in case 08-12148 and remanded both complaints to the state court. The remaining motions were denied as moot. In the Opinion, the Court concluded as follows: (1) SSD pled allegations supporting a colorable cause of action against the City, thus, the City had not been fraudulently joined as a party defendant to defeat federal court jurisdiction and (2) it was appropriate to abstain from exercising jurisdiction over SHC's complaint because it primarily concerned issues

of state land use. *See McDonald v. Village of Northport, Mich.*, 164 F.3d 964, 967 (6th Cir. 1999).

On August 1, 2008, Bannum moved for the Court to reconsider its decisions in the related cases. Bannum suggests that in assessing whether SSD had advanced a facially valid cause of action against the City the Court made three errors of law or fact: (1) the Court erroneously understood the parties to believe that the Bannum facility to be a correctional facility as defined in the Code; (2) the Court erroneously stated that the Code required special approval for correctional facilities before operating in an M-2 zoning district; and (3) the Court misinterpreted Michigan authority concerning the timely appeal of a zoning board's decision. Bannum also contends that the Court erred in abstaining from exercising jurisdiction because SHC sought leave to amend its complaint to assert federal causes of action.

II

The Court will grant a motion for reconsideration if the moving party shows a "palpable defect" that misled the Court and the parties, and correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Fleck v. Titan Tire Corp.,* 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). The Local Rules provide that any "motion for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted." E.D. Mich. LR 7.1(g)(3).

III

In considering the motions to abstain and remand, the Court's analysis was focused on the question of whether the City was fraudulently joined as a party defendant. To establish fraudulent joinder, a defendant must show that the plaintiff does not have a "colorable cause of action" under state law against the non-diverse defendant, based on either the facts alleged or the state of the law.

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (citation omitted). "There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . ." *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted). In other words, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted). The removing party "faces a considerable burden," *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 549 (E.D. Ky. 2001), as "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493 (citation omitted); *see also Alexander*, 13 F.3d at 949 (any ambiguities of law or fact are resolved in favor of the non-removing party) (citation omitted).

Bannum first takes exception to the Court's statement that Bannum did not appear to dispute that the RRC facility is correctly characterized as a correctional institution under the Code. The Court was not concluding that the Bannum facility should be considered a correctional institution under the Code; it was merely outlining Plaintiffs' analysis of the City's Code requirements in conjunction with its consideration of the question of whether the City had been fraudulently joined as a party defendant. Indeed, on the Court's reading of the papers, neither Bannum nor the City have sought to explain why they believe the zoning code was complied with. The Court was satisfied in reviewing the merits of SSD's cause of action, that the City was not fraudulently joined as a defendant because a reasonable basis existed for predicting that state law might impose liability on the outlined facts. In considering the merits of the motions to abstain and to remand, the Court considered the sufficiency of the allegations and did not weigh facts.

Understandably, Bannum believes that it did every reasonable thing it could to verify its

compliance with the Code. The limited record furnished to the Court demonstrates that Bannum went to great efforts to provide the City Planning Commission with detailed and extensive information regarding the facility in order to avoid potential complications. *See e.g.* dkt # 21 at 5 (08-12148). However, beyond relying on the City's advise, the Court still remains uninformed about Bannum's interpretation of the Code.

Next, Bannum asserts that, in outlining Plaintiffs' cause of action in conjunction with its effort to assess whether the City was fraudulently joined, the Court incorrectly interpreted the Code to require a special use permit before operating a correctional institution in an M-2 zone. Bannum emphasizes that "all permitted uses after special approval in the M-1 district" are principal permitted uses in a district zoned M-2. Dkt. # 26 at 11 (08-12148) (*citing* SAGINAW, MI., CODE at § 153.391(B)). Bannum reasons that because a special use permit is required to operate a correctional facility in a district zoned M-1, it is a principal permitted use in a district zoned M-2.

Bannum's interpretation of the Code notwithstanding, an alternative interpretation of the Code is possible. Bannum's interpretation of the Code relies upon section 153.391, which contains a qualifier that "no uses shall be permitted, *unless otherwise provided in this subchapter*, except the following . . . ." SAGINAW, MI., CODE at § 153.391(emphasis added). Indeed, some uses that require a special use permit in a district zoned M-1 are principal permitted uses in a district zoned M-2. Penal or correctional institutions, however, are addressed later in the very next section, which provides that a penal or correctional institution "may be permitted . . . subject further to the approval of the City Planning Commission in accordance with processing procedures in § 153.597. SAGINAW, MI., CODE at § 153.392(L). Section 153.597 vests the City Planning Commission with "specific powers and duties," including "[t]he special approval of specific land uses and activities as required under . . . § 153.392 [that] may be authorized by the City Planning Commission pursuant

to the requirements of this section." SAGINAW, MI., CODE at § 153.597(B). Ultimately, Bannum, as the removing party, does not meet its "considerable burden" that SSD's cause of action is so wholly lacking in merit to conclude that the City was fraudulently joined as a party defendant to the case. At a minimum, any ambiguity of law must be resolved in favor of the non-removing party.

Bannum also suggests that this Court erred in concluding that Plaintiffs are able to advance colorable causes of action in light of the fact they did not appeal the City Planning Commission's decision within the twenty-one or thirty day limit for appeals. *See* Mich. Comp. Laws § 125.3606. Indeed, Michigan law requires that a decision of the zoning board be appealed within those time limits. The substantive core of Plaintiffs' allegations, however, is that the City Planning Commission failed to observe a procedure that would have provided notice to parties potentially aggrieved of its decision. Thus, Plaintiffs contend they did not have timely notice of the decision and, as a result, were in no position to appeal the decision to the zoning board of appeals. Plaintiffs' allegation provides a colorable basis to conclude that the timing requirements of section 125.3606 may be inequitable in this situation.

Additionally, Bannum asserts that the Court incorrectly relied on Mich. Comp. Laws § 125.3208 for the conclusion that SSD could assert a colorable claim. Bannum's point notwithstanding, Bannum does not dispute that other provisions of the Zoning Enabling Act and the Code provide a basis for SSD to assert an action. *See* Mich. Comp. Laws § 125.3606; *see also* SAGINAW, MI., CODE at § 153.626(A)(2). Despite the fervor with which Bannum stresses its opinion, remand to the state court does not extinguish its ability to advance such arguments. Rather, it places them within the jurisdiction of the state court where they are more appropriately addressed.

Bannum also suggests that the Court's decision to abstain was incorrect in light of SHC's request to amend the complaint to allege federal causes of action. Indeed, a complaint asserting

violations of the federal constitution provides a federal court the predicate to exercise subject-matter jurisdiction. *See* 28 U.S.C. § 1331. "[F]ederal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction." *Douglas v. E.G. Baldwin & Assoc., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998) *overturned on other grounds by Cobb v. Contract Transport, Inc.*, 452 F.3d 543, 548 (6th Cir. 2006); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (courts have an independent obligation to determine whether subject matter jurisdiction exists). If a court determines it does not have subject-matter jurisdiction, it lacks power to substantively address the merits of the case. *See Arbaugh*, 546 U.S. at 514.

In this case, the Court considered the motions to abstain and to remand in light of the complaint as plead. Although SHC also sought to amend its complaint to allege federal causes of action, the Court's initial duty is to determine whether it may exercise jurisdiction to consider the request. The Court concluded that abstention was proper under *McDonald v. Village of Northport, Mich.*, 164 F.3d 964, 967 (6th Cir. 1999). Moreover, the Court was obliged to determine whether the City was fraudulently joined to defeat diversity jurisdiction. After declining to exercise jurisdiction and concluding that the City's joinder was legitimate, the state court retains jurisdiction to address substantive motions.

Additionally, the fact that SHC sought to allege violations of federal law is inconsequential for another reason. When "zoning or land use decisions, decisional processes, or laws" serve as the basis for a plaintiff's federal claim, abstention is still proper. *Id.* at 969 (*quoting Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319, 1328 (4th Cir. 1994) (en banc)). SHC's potential constitutional claims are ultimately "land use questions" appropriately before the state court. *See McDonald*, 164 F.3d at 969.

IV

Accordingly, it is **ORDERED** that Defendant Bannum, Incorporated's motions for reconsideration [Dkt. # 26, 08-12148, Dkt. # 22, 08-12154] are **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 14, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 14, 2008.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---